IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

FREEWAY FORD, INC.,                 *

       Plaintiff,                *

vs.                                       *
                                               CASE NO. 4:06-CV-123 (CDL)
FREEWAY MOTORS, INC., EMPIRE    *
PARTNERS, LLC, and STRATUS
GROUP, INC.,                  *

       Defendants.             *

O R D E R

Presently pending before the Court is Plaintiff Freeway Ford's Motion for a Preliminary Injunction (Doc. 23). Plaintiff seeks to enjoin Defendants Freeway Motors, Inc., Empire Partners, LLC, and Stratus Group, Inc., (collectively "Defendants") from using the word "Freeway" in its trade area. Specifically, Plaintiff claims that Defendants' use of "Freeway" in the name of their store, "Freeway Auto Credit," violates the Lanham Act, 15 U.S.C. §§ 1114, 1115, 1125(a), 1125(c), and Georgia law by infringing upon Plaintiff's trademark through false designation, through unfair competition, and through trade name dilution. Additionally, Plaintiff claims that Defendants' continued use of the name "Freeway" will cause irreparable injury to Plaintiff. For the following reasons, Plaintiff's Motion for a Preliminary Injunction (Doc. 23) is granted.

BACKGROUND

In 1981, Richard Stephens opened a car dealership named "Freeway Ford" in Muscogee County, Georgia. Since its opening, Freeway Ford has advertised in the greater Columbus, Georgia, area using the name "Freeway Ford." (*See, e.g.* App., Fig. 1.) Freeway Ford sells and leases new and used automobiles from its dealership on Box Road in Columbus, Georgia.

In 2003, Defendants opened a used car dealership in Georgia that they named "Freeway Auto Credit." Defendants subsequently expanded their Freeway Auto Credit dealerships into Tennessee. Freeway Auto Credit typically leases, but also occasionally sells, automobiles to persons with low credit scores. In 2006, Freeway Auto Credit opened a store in Muscogee County, Georgia. When Richard Stephens discovered Defendants' use of the name "Freeway Auto Credit," Plaintiff sent Defendants a cease and desist letter, contending that Defendants' use of the word "Freeway" in its name violated Plaintiff's rights to its marks "Freeway" and "Freeway Ford." Notwithstanding this letter, Defendants opened the Freeway Auto Credit store in Columbus in December 2006, using the name "Freeway Auto Credit." Defendants did, however, attach a disclaimer[1] to the Freeway Auto Credit sign in Columbus disavowing any affiliation with

---

[1]The disclaimer, as shown in Appendix, Figure 2 *infra*, states:

Freeway Auto Credit is a Service Mark and Trade Mark of Stratus Group, Inc., which is **NOT** now nor has ever been affiliated, connected, or associated with Freeway Ford, Inc., of Columbus, Ga.

Freeway Ford.  (*See* App., Fig. 2.)  To protect its mark, Plaintiff instituted this action for trademark infringement.

DISCUSSION

**A.  Preliminary Injunction Standard**

"The grant or denial of a preliminary injunction is within the sound discretion of the district court . . . ."  *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002) (citation and internal quotation marks omitted). A preliminary injunction for trademark infringement may issue where the party seeking the preliminary injunction establishes four elements:

> (1) substantial likelihood of success on the merits; (2) that it would be irreparably harmed if injunctive relief were denied; (3) that the threatened injury to the trademark owner outweighs whatever damage the injunction may cause to the alleged infringer; (4) that the injunction, if issued, would not be adverse to the public interest.

*Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300 (11th Cir. 2001).  In making this determination, the district court should keep in mind that "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establish[es] the 'burden of persuasion' as to all four elements." *Id.* (internal quotation marks and citation omitted).

3

**B. Substantial Likelihood of Success on the Merits[2]**

In order to establish a claim for trademark infringement, unfair competition, and false designation of origin of an unregistered mark under the Lanham Act,[3] Plaintiff must show (1) that it has a right to the mark, and (2) that there is a likelihood of confusion among customers as to the use of the mark by Plaintiff and Defendants. *See Montgomery v. Noga*, 168 F.3d 1282, 1300 (11th Cir. 1999); *Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 906 (11th Cir. 2000); *Lone Star SteakHouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997). When a mark is

---

[2] Plaintiff's claims under Georgia law are governed by essentially the same standards that govern the Lanham Act. Consequently, the Court addresses federal and state trademark infringement, unfair competition, and false designation of origin claims together in this one section. *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1539 n.11 (11th Cir. 1985).

[3] § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), states in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . shall be liable in a civil action by any person who believes that he or she is or is likely damaged by such act.

unregistered,[4] a party has the right to the use of the mark if the mark is "either inherently distinctive or has acquired distinctiveness through secondary meaning." *Montgomery v. Noga*, 168 F.3d 1282, 1300 (11th Cir. 1999). Thus, Plaintiff must first show that the "Freeway Ford" mark is distinctive. Additionally, in order to demonstrate that it has a right to the "Freeway Ford" mark, Plaintiff must show that it is the senior user of the mark in its trade area. Finally, Plaintiff must establish that there is a likelihood of confusion between Plaintiff's and Defendants' marks. In determining whether there is a likelihood of confusion, the Court considers the following factors:

> (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods, *i.e.*, retail outlets or customers; (5) the similarity of advertising methods; (6) the defendant's intent, *e.g.*, does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) the most persuasive factor on likely confusion is proof of actual confusion.

*Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1514 (11th Cir. 1984).

---

[4] Plaintiff registered the "Freeway" mark in Georgia on September 27, 2006. "Freeway" is registered as a service mark used in connection with an automobile dealership featuring new and used automobiles and in respect to automotive repair services. Since "Freeway" is not registered federally, this has no bearing on the Lanham Act claim.

5

1. Right to the "Freeway Ford" Mark

First, the Court must determine if Plaintiff has a right to the mark "Freeway Ford."[5] In order to establish rights to a mark, a party must show that the mark is distinctive and that it is the prior user of the mark in commerce.

  *a. Distinctiveness*

There are four types of marks–generic, descriptive, suggestive, and arbitrary. *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1540 (11th Cir. 1985) (citation omitted). Generic marks denote the class of a product and are not entitled to protection ("e.g., 'liquor store' used in connection with the sale of liquor"). *Frehling Enters. Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) (citation omitted); *see also Laite*, 756 F.2d at 1540 (citation omitted). Descriptive marks "describe a characteristic or quality of an article or service (e.g., 'vision center' denoting a place where glasses are sold)." *Frehling Enters.*, 192 F.3d at 1335 (citation omitted). Descriptive marks are distinctive only when they have acquired secondary meaning. *Laite*, 756 F.2d at 1540 (citation omitted). A suggestive mark "subtly connotes something about the service or product." *Id.* (citation omitted). For example,

---

[5] Plaintiff also claims that it has a right to the mark "Freeway" alone. Since the Court finds, as discussed *infra*, that Plaintiff has a right to the mark "Freeway Ford" and that there is a likelihood of confusion between "Freeway Ford" and "Freeway Auto Credit," it is unnecessary to decide whether Plaintiff has acquired a right to the mark "Freeway."

6

"'penguin' would be suggestive of refrigerators." *Frehling Enters.*, 192 F.3d at 1335 (citation omitted). "A suggestive mark will be protected without proof of secondary meaning." *Laite*, 756 F.2d at 1540 (citation omitted). Finally, an arbitrary mark is one "that bears no relationship to the product." *Frehling Enters.*, 192 F.3d at 1335 (citations omitted). Arbitrary marks are "generally inherently distinctive." *Laite*, 756 F.2d at 1540 (citation omitted).

The Court finds that Plaintiff's mark is descriptive and that it has acquired secondary meaning. "Secondary meaning is the connection in the consumer's mind between the mark and the product's producer." *Gift of Learning Found. v. TGC, Inc.*, 329 F.3d 792, 800 (11th Cir. 2003). In determining secondary meaning when a Plaintiff has not produced consumer survey evidence, the Court looks at:

> (1) the length and manner of [the mark's] use; (2) the nature and extent of advertising and promotion; (3) the efforts made by [the user] to promote a conscious connection in the public's mind between the name and [the user's] product or business; and (4) the extent to which the public actually identified the name with the [user's] product or venture.

*Ferrellgas Partners., L.P. v. Barrow*, 143 Fed. App'x 180, 189 (11th Cir. 2005) (citing *Conagra*, 743 F.2d at 1513); *TGI*, 329 F.3d at 800. The evidence shows that Plaintiff has used "Freeway Ford" in conjunction with its car dealership since 1981. The owner of the dealership, Richard Stephens, avers that since 1989, Plaintiff has spent in excess of ten million dollars on advertising expenses. Additionally, Plaintiff has submitted numerous examples of its

advertisements (radio, newspaper, and telephone book) and use of the "Freeway Ford" mark. The evidence of actual confusion also suggests that persons in the trade area associate "Freeway Ford" with the dealership on Box Road in Columbus, Georgia. (*See, infra,* discussion of actual confusion.) Consequently, the Court finds that Plaintiff's "Freeway Ford" mark is sufficiently distinctive to warrant trademark protection.

### *b. Prior Use in Commerce*

"Under common law, trademark ownership rights are appropriated only through actual prior use in commerce."[6] *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001). In order to show prior use in commerce, Plaintiff must establish that it (1) adopted the mark[7] and (2) that the mark is "used in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Id.* at 1195 (citation and quotation marks omitted). "Courts generally . . . inquire into the activities surrounding the prior use of the mark to determine whether such an association or notice is present." *Id.* (citations omitted). In other words, the court looks at the "totality of the circumstances"—including sales,

---

[6]"[U]se in commerce" is also a jurisdictional predicate under the Lanham Act. Plaintiff's use of the mark in selling cars satisfies this requirement.

[7]The Court finds that Plaintiff has adopted the mark since it has used the "Freeway Ford" mark in the Columbus, Georgia, area since 1981. (Stephens Aff. ¶ 4, Feb. 7, 2007.)

8

advertisements, and distribution of goods—in order to determine whether the mark has been sufficiently used in commerce. *Id.*

Plaintiff claims it is entitled to protection as the prior user of the mark in the following counties: Muscogee, Harris, Chattahoochee, Talbot, and Marion counties in Georgia, and Russell and Lee counties in Alabama.[8] (Stephens Aff. ¶4.) Plaintiff has shown that it advertises with the *Columbus Ledger-Enquirer* and that the *Columbus Ledger-Enquirer* circulates to all of its trade area. Plaintiff has also produced evidence of extensive sales in the trade area. Finally, Plaintiff has shown that it advertises on radio stations that broadcast to the entire trade area.

Defendants contest Plaintiff's claim by arguing that they have used the mark "Freeway Auto Credit" in Georgia since approximately the beginning of 2003. Their use of "Freeway Auto Credit," however, was confined to Sumter, Lee, Dougherty, Bibb, Colquitt, and Lowndes counties in Georgia. Defendants did not use the "Freeway Auto Credit" mark inside Plaintiff's claimed trade area until the 2006 opening of the Manchester Expressway store in Muscogee County, Georgia. When Richard Stephens saw the Freeway Auto Credit store in Muscogee County, Plaintiff sent Defendants a cease and desist letter claiming prior rights to the mark. Defendants then opened the store with a disclaimer under the "Freeway Auto Credit" sign.

---

[8] The Court refers to these counties collectively as the "trade area."

The evidence therefore shows that (1) Plaintiff adopted the mark; (2) Plaintiff has used the mark in the trade area since 1981; and (3) Plaintiff has had sales and has advertised extensively in the trade area since 1981. Consequently, Plaintiff has established that it was the first to use the mark in commerce in the trade area. Plaintiff has also shown that it has attempted to enforce its rights to the mark in the trade area. The Court therefore finds that Plaintiff is the prior user of the mark in commerce and thus has a right to the "Freeway Ford" mark.

2. Likelihood of Confusion

The Court must next determine whether Defendants' mark could cause customer confusion. In making this determination, the Court looks to seven factors: (1) strength of the mark, (2) similarity of the marks, (3) similarity between products and services, (4) similarity of sales methods, (5) similarity of advertising, (6) Defendants' intent, and (7) actual confusion.

*a. Strength of the Mark*

Although a descriptive mark is presumed to be weaker, the Court notes that Plaintiff has established secondary meaning for the "Freeway Ford" mark. Thus, the Court finds that the mark is relatively strong. Third party use of the mark is "also important in gauging the strength of a mark." *Frehling Enters.*, 192 F.3d at 1336. Defendants claim that the mark is weak because it is used by other car dealerships in Colorado, Minnesota, and Illinois. Third

party use of the mark may diminish the strength of a mark. Here, however, there is no third party use of the mark in Plaintiff's trade area. The Court thus finds that "Freeway Ford" is a relatively strong mark.

> b.  *Similarity between Plaintiff's Mark and Defendants' Mark*

In looking at the similarity of the marks, the Court considers the "overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling Enters.*, 192 F.3d at 1337. Here the marks are very similar. (See App., Figs. 1 & 2.) Both marks use bold, large, blue block letters for the word "Freeway." The fonts used for the word "Freeway" are almost exactly the same on the Freeway Auto Credit sign and the Freeway Ford advertisements. Both marks also include a depiction of the American Flag—although Freeway Ford has the flag on the left side of the word "Freeway," and Freeway Auto Credit has the flag flowing from the right side of the word "Freeway." Finally, the marks have the secondary words—"Ford" and "Auto Credit" respectively—in smaller font and below the word "Freeway." The marks, therefore, are very similar.

Defendants argue that the disclaimer below Freeway Auto Credit's sign prevents their mark from being similar to Plaintiff's mark. The Court rejects this argument. Although the disclaimer itself is placed below the Freeway Auto Credit sign, it is difficult to read the text of the disclaimer. In fact, the disclaimer is virtually

11

unreadable unless a person is physically on Freeway Auto Credit's car lot. (Gammage Aff. 3, Fig. 1, Apr. 5, 2007.) Thus, the Court finds that the disclaimer would likely not prevent a person from stopping at Freeway Auto Credit if that person thought it was affiliated with Freeway Ford. Consequently, the Court finds unavailing Defendants' argument that the disclaimer prevents confusion.

### c. Similarity between Products and Services

The Court next looks at the similarities "between the retail outlets for and the predominant customers of [P]laintiff's and [D]efendant[s'] goods . . . ." *Frehling Enters.*, 192 F.3d at 1339 (citations and quotation marks omitted). "This factor takes into consideration where, how, and to whom the parties' products are sold." *Id.* Preliminarily, the Court notes that both parties sell and/or lease the same goods—new and used cars. Next, the Court rejects Defendants' claims that the "parties' customer classifications differ sharply" because "Stratus targets consumers who are such high credit risks that they would not be able secure [sic] financing for the purchase of new or used cars at dealerships like Freeway Ford." (Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. 14.) The Eleventh Circuit rejected a similar argument in *Frehling Enterprises*, where the defendants attempted to distinguish between affluent customers who bought furniture from high-end department stores and less affluent customers who shopped in mass market retail outlets. The Eleventh Circuit was "troubled by the district court's

12

methodology of dividing the world up into distinct segments of 'affluent' and 'less affluent' for the purpose of determining the balance of [this] factor." *Frehling Enters.*, 192 F.3d at 1339. The court further explained that "[t]he parties' outlets and customer bases need not be identical, but some degree of overlap should be present." *Id.* Here, common sense dictates that there is clearly some overlap between Freeway Ford's customers and Freeway Auto Credit's customers.

Defendants also argue that Freeway Auto Credit provides different services than Freeway Ford because it does not sell cars, but leases them. The Court rejects this argument. Defendants' general manager, Patrick Bass, initially claimed that Freeway Auto Credit "does not sell automobiles to anyone." (Bass Aff. ¶ 5, Mar. 12, 2007.) Bass later amended this statement to explain that he "intended to state that [it] does not finance the sale of automobiles to anyone." (Bass Aff. ¶3, Apr. 9, 2007.) The Court finds these attempts to distinguish the services of Freeway Auto Credit and Freeway Ford disingenuous, and holds that the parties' products and services are sufficiently similar that they cause confusion.

### d. *Similarity of Sales Methods*

This element is very similar to the preceding element. Thus, the Court finds that Freeway Ford and Freeway Auto Credit, by selling

and/or leasing cars, employ sufficiently similar sales methods. This factor weighs in favor of a likelihood of confusion.

### e. *Similarity of Advertising Methods*

"This factor looks to each party's method of advertising." *Frehling Enters.*, 192 F.3d at 1339. Here, both parties use radio, television, newspapers, and direct mailings. "[T]here is likely to be significant enough overlap in the . . . publications[, radio, and television,] in which the parties advertise that a possibility of confusion could result. *Id.* at 1340 (citation omitted). Consequently, the Court finds this element weighs in favor of a likelihood of confusion.

### f. *Defendants' Intent*

Defendants claim that they had no intent to capitalize on Plaintiff's reputation as evidenced by their use of the disclaimer on their sign. Although Defendants were aware of Freeway Ford and its mark, that fact standing alone does not show intent to derive benefit from Freeway Ford's goodwill. Without more evidence of intent, the Court cannot at this time make a determination as to the intent of Defendants in opening a Freeway Auto Credit in Muscogee County. Therefore, the Court finds that this factor is neutral in the weighing process.

### g. *Actual Confusion*

"[E]vidence of actual confusion is the best evidence of a likelihood of confusion." *Frehling Enters.*, 192 F.3d at 1340.

14

Plaintiff has introduced several affidavits evidencing actual confusion between "Freeway Auto Credit" and "Freeway Ford." Defendants attempt to discount each of these affidavits as too vague, unpersuasive, self-serving, or incomplete. The Court finds the affidavits credible and that they support a finding of actual confusion. For example, Donald Odom stated that he went to Freeway Auto Credit to purchase a car because he assumed it to be a "satellite lot of Freeway Ford." (Odom Aff. ¶ 4, Mar. 19, 2007.)[9] Nathan Suber, a Muscogee County resident, saw a Freeway Auto Credit commercial on his television and assumed that Freeway Auto Credit was a "subsidiary of or . . . associated with Freeway Ford." (Suber Aff. ¶ 4, Feb. 14, 2007.) Additionally, Donald Hunt drove by the Freeway Auto Credit store prior to its opening, saw the signage, and "understood that Freeway Ford was opening an additional car lot at [that] location." (Hunt Aff. ¶ 4, Feb. 14, 2007.) Finally, James Davis, a radio executive who produces commercials for Freeway Ford, explained that after seeing the Freeway Auto Credit sign, he became excited because he thought Freeway Ford had opened a new lot in Columbus and that this new lot would provide him with an opportunity to sell Freeway Ford additional advertising. Plaintiff has produced sufficient evidence to support a finding of actual confusion between Freeway Auto Credit and Freeway Ford.

---

[9] Portions of Mr. Odom's affidavit are strongly disputed by Defendants as being factually incorrect. For the purpose of this analysis, this Court will only consider the personal perceptions of Mr. Odom regarding his confusion between Freeway Auto Credit and Freeway Ford.

15

Balancing the relevant factors, the Court finds that there is a substantial likelihood of confusion between "Freeway Auto Credit" and "Freeway Ford." Specifically, factors one, two, three, four, five, and seven weigh heavily in Plaintiff's favor. Factor six likely favors neither side, but for purposes of this analysis, the Court assumes it favors Defendants. Thus, Plaintiff has shown that it is likely that a reasonable consumer would be confused by the two marks.

Since Plaintiff has demonstrated that it has a right to the "Freeway Ford" mark and that there is a likelihood of confusion between Plaintiff and Defendants' marks, Plaintiff has met its burden of establishing a substantial likelihood of success on the merits for both the federal and state trademark claims regarding the mark "Freeway Ford."

**C. Substantial Threat of Irreparable Harm**

"Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable harm can also be based upon the possibility of confusion." *Barrow*, 143 Fed. App'x at 190. Additionally, a plaintiff does not have to show actual damage. "[T]he loss of control of one's reputation by the adoption of a confusingly similar mark . . . supplies the substantial threat of irreparable harm." *Id.* at 191. The Court finds that here there is a "sufficiently strong showing of likely confusion so that irreparable harm is established." *Id.*

16

**D. Final Factors – Balancing Threatened Injury and Damage to Infringer and Public Interest**

The Court finds that the threatened injury to Freeway Ford far outweighs the potential damage to Defendants. Freeway Auto Credit has been open in Muscogee County for less than a year. Consequently, any goodwill that it has received from the use of the name "Freeway Auto Credit" likely came from association with Plaintiff's mark. *See, e.g. Barrow*, 143 Fed. App'x at 191 (explaining that there is less harm when infringer is operating for a short period of time because infringer likely has "limited goodwill of its own"). An injunction preventing the use of the similar mark, therefore, would not likely cause Defendants much damage. However, allowing Defendants to continue to use Freeway in their name in the Plaintiff's trade area will likely cause substantial harm to Plaintiff. Additionally, the public interest would be "served by the injunction by avoiding confusion in the marketplace." *Id.*

Based on the foregoing, the Court finds that Plaintiff has established all of the elements for a preliminary injunction, and accordingly, Plaintiff's Motion for a Preliminary Injunction (Doc. 23) is granted.

**INJUNCTION**

Defendants are hereby enjoined from using, permitting, or allowing the use of the word "Freeway" in any signage or advertisements for any of their Freeway Auto Credit stores physically located in the counties of Muscogee, Harris, Chattahoochee, Talbot,

17

and Marion in Georgia and the counties of Russell and Lee in Alabama. Defendants shall have fourteen days from the date of this Order to comply with it.

IT IS SO ORDERED, this 20th day of April, 2007.

                                       /s/ Clay D. Land
                                                   CLAY D. LAND
                                       UNITED STATES DISTRICT JUDGE

# APPENDIX

**Figure 1:** Freeway Ford's Logo



**Figure 2:** Stratus's Sign in Columbus, Georgia

